ELLEN F. ROSENBLUM
Attorney General
SHEILA H. POTTER #993485
BRIAN SIMMONDS MARSHALL  #196129
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sheila.Potter@doj.state.or.us
         Brian.S.Marshall@doj.state.or.us

Attorneys for Defendant Kate Brown

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON RESTAURANT AND LODGING ASSOCIATION, an Oregon Domestic Non-Profit Corporation; and RESTAURANT LAW CENTER,<br><br>Plaintiffs,<br><br>v.<br><br>KATHERINE "KATE" BROWN, in her official capacity as the Governor of the State of Oregon,<br><br>Defendant. | Case No.  3:20-cv-02017-YY<br><br>DECLARATION OF DR. DEAN SIDELINGER IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER |

I, Dean Sidelinger, declare under penalty of perjury:

1.	I serve as the State Health Officer and State Epidemiologist for the State of Oregon.  In this role I support public health practice, programs, and staff.  With respect to

COVID-19 (i.e. coronavirus disease 2019), my role has been to participate as a Senior Health Advisor as part of the Incident Management Team structure, to oversee the epidemiological response and reporting of data to our federal public health partners, and to provide briefings to the Governor to guide responses to control the pandemic.

2. I received my MD degree from Georgetown University School of Medicine, completed several years of coursework towards a Masters of Public Health, and received a Masters of Science in Education from University of Southern California.  I completed a Fellowship in Community Pediatrics following completion of Pediatrics Residency.  My curriculum vitae is attached to this declaration as Exhibit 1.

3. I was asked to provide information about COVID-19, its prevalence in the State of Oregon, and Governor Brown's Executive Orders regarding COVID-19, particularly Executive Order 20-65 as it applies to restaurants.

4. COVID-19 is an infectious disease caused by a virus (SARS CoV-2).  COVID-19 is transmissible via respiratory droplets (typically within six feet of an infected individual) and via airborne spread (at greater distances over longer periods of time).  While the spread of SARS-CoV-2 is thought to occur primarily through respiratory droplet transmission.  The spread of the virus via airborne transmission is facilitated in enclosed spaces, with prolonged exposure and in the face of inadequate ventilation or air handling. (CDC Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission, https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html).  This transmission can be mitigated by improved ventilation, wearing masks, and limiting activities—such as exercising or singing—that cause heavy breathing while around other individuals.  While not the main mode of transmission, it is possible for someone to become infected from touching a surface contaminated by respiratory droplets containing the COVID-19 virus, and then touching their face (i.e. mouth, nose, eyes).

5. The COVID-19 virus is spread relatively easily. Spread of infectious agents is commonly presented as R0, or the "reproductive number." R0 represents the number of people who are expected to get infected from one case in the absence of control measures, such as physical distancing, limits on gathering sizes, and use of face coverings. Reasonable estimates of R0 for COVID-19 range from 2.2 to 5.7. (Sanche 2020, available at https://wwwnc.cdc.gov/eid/article/26/7/20-0282_article). The effective R0 can be reduced with community mitigation measures, such as those implemented in Oregon. COVID-19 is more infectious than H1N1 influenza (R0=1.5) but less than measles (R0=12–18).

6. While infected people with symptoms (coughing and sneezing) are understood to be most likely to spread the COVID-19 virus, asymptomatic and pre-symptomatic infected persons also contribute to the spread of the virus. Individuals who do develop symptoms transmit the virus in the days leading up to development of symptoms. It is estimated that up to half (or more) of individuals may not develop symptoms, but they are still able to transmit the virus to others. Testing of asymptomatic individuals is limited in Oregon and is prioritized for those with close contact to an individual with COVID-19 and others at higher risk for COVID-19. Limitations in testing also make it impossible to quantify precisely the role of asymptomatic and pre-symptomatic transmission in the spread of the disease. The results of a test only indicate whether a person is infected, or not, at one point in time. In addition, testing may result in false negatives, especially in people without COVID-19 symptoms, because the sensitivity of viral testing in asymptomatic people is very low.

7. According to the U.S. Centers for Disease Control and Prevention ("CDC"), the U.S. had a total of 12,028,081 diagnosed cases of COVID-19—1,181,710 (9.8%) of them in the last 7 days—and 255,076 people in the U.S. had died from COVID-19 as of November 20, 2020. (https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days). Oregon has had 62,175 diagnosed cases and 812 Oregonians have died from COVID-19 as of November 20, 2020.

Page 3 -    DECLARATION OF DR. DEAN SIDELINGER IN OPPOSITION TO PLAINTIFFS' MOTION
            FOR A TEMPORARY RESTRAINING ORDER

(https://public.tableau.com/profile/oregon.health.authority.covid.19#!/vizhome/OregonCOVID-19CaseDemographicsandDiseaseSeverityStatewide/DemographicData).

8.  The community mitigation measures put in place in Oregon, including Governor Brown's Executive Orders, have reduced the spread of COVID-19 in Oregon.  Without an effective vaccination, reducing contact between individuals who are infected or susceptible to infection is the only effective measure to reduce the spread of disease, including severe disease.

9.  Reopening commercial activity and people congregating indoors as the weather has turned colder and wetter has led to an increase in transmission of the COVID-19 virus in Oregon, even with physical distancing and source containment (face covering) requirements in place.

10.  In recent weeks, COVID-19 has spread at an escalating and alarming rate in Oregon.  The effective reproductive number is estimated to be approximately 1.47 in Oregon. (https://www.oregon.gov/oha/PH/DISEASESCONDITIONS/DISEASESAZ/Emerging%20Respitory%20Infections/Epidemic-Trends-and-Projections.pdf).  This means that the prevalence of COVID-19 is increasing rapidly under present conditions.  Without the emergency measures instituted by Governor Brown's Executive Orders and the public's compliance with those measures and other public health guidance, the spread of COVID-19 would increase at an even higher rate.

11.  The risk of transmission differs among settings.  Among other variables, the likelihood of transmission from an infected individual to a healthy individual depends on length of exposure, space between individuals, use or non-use of masks, whether expression of air through breathing and talking is greater than normal, and air flow in the environment, including whether it is indoors or outdoors.  Good hygiene such as frequent handwashing and the use of personal protective equipment like masks also reduce the risk of transmission, but they do not eliminate it.

12. To assess the risk of transmission in a particular environment, epidemiologists commonly rely on associational studies, case reports, and modeling to understand the complex relationship between a pathogen's spread and human behavior in the built environment. Randomized trials of behavior patterns are generally not possible due to the practical and ethical limitations on random assignment of risky behavior.

13. Multiple recent studies also suggest that restaurants are an important source of the spread of COVID-19. Some of these studies include:

   a. A September 2020 report from the CDC found that people infected with COVID-19 were more than twice as likely as others to have dined at a restaurant in the last two weeks. (https://www.cdc.gov/mmwr/volumes/69/wr/mm6936a5.htm)

   b. A September 2020 analysis by the *Washington Post* found a doubling of the rate of COVID-19 cases three weeks following reopening of bars. The analysis examined aggregate location information from cellphones and found a statistically significant relationship between foot traffic to bars in the week following reopening and an increase in COVID-19 cases three weeks later. (https://www.washingtonpost.com/health/2020/09/14/covid-spread-restaurants-bars/)

   c. A November 2020 study in *Nature* modeling the spread of COVID-19 concluded, based on actual data regarding human movement during the pandemic, that gathering places such as restaurants "account for a large majority of infections" because they provide a hub for super-spreader events. (https://www.nature.com/articles/s41586-020-2923-3?utm_medium=affiliate&utm_source=commission_junction&utm_camp

aign=3_nsn6445_deeplink_PID100041175&utm_content=deeplink#Sec50)

d. A JPMorgan study of the prevalence of card-present (i.e. dine-in) transactions at restaurants were particularly predictive of increases in the prevalence of COVID-19: localities where restaurant spending was higher later had greater spread of the virus. Conversely, higher spending at grocery stores correlated to a lower rate of spread of the virus, the same study found.

e. Several state and local public health jurisdictions report outbreaks associated with bars and restaurants, and CDC case reports have shown that patrons at restaurants and bars can transmit COVID-19 to other patrons. (https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article; https://wwwnc.cdc.gov/eid/article/27/1/20-3480_article)

14. As noted previously, ventilation is an important factor in the risk of infection. For that reason, outdoor dining is less risky than indoor dining. Outdoor dining would still be considered higher risk than other activities in outdoor settings because people do not maintain six feet of distance from others in their seated party and patrons must remove their masks to eat or drink. The CDC also considers outdoor dining to put people at more risk than delivery, take-out, and curb-side pick up. (https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/business-employers/bars-restaurants.html). In addition, some structures commonly used for "outdoor" dining in colder months, such as tents with multiple walls, restrict ventilation and raise the risk of transmission.

15. In Oregon, public health investigations attempt to identify the source of an infection as well as potential close contacts to an individual when they were potentially infected. Information is gathered through a series of open-ended questions asking cases where they were

while potentially infected and with whom they may have been in close contact—within six feet for fifteen or more minutes.  Specific questions are asked about employment in adults, thus facilitating identification of potential workplace outbreaks.  Other linkages may be more difficult to identify because, for example, individuals may report multiple social get togethers in different locations.  In determining if cases are linked as an outbreak, public health authorities consider whether there are more cases in a location than would be expected for a given population and time; if there is a plausible transmission route within the facility; and whether there is no more likely means of acquisition identified.  Using these criteria, no source for the case can be identified for more than one-third of recent cases in Oregon, with this percentage continuing to increase as the number of new cases rapidly escalates.  This is consistent with diffuse community spread.  For new cases in November, no source can be identified for more than 50 percent of cases, in part because the increase in the number of COVID-19 infections has compromised some county public health authorities' capacity for timely and comprehensive contract tracing, and counties have scaled back the length of interviews to keep pace with the number of new infections.

16.     I understand that a statement I made to reporters in August that "[i]n our data, there is no clear evidence of significant transmission in bars or restaurants" has been submitted to the Court in this case.  My statement referred specifically to identification of restaurants and bars as a source of infection through contact tracing by county public health authorities in Oregon.  However, given the limitations in the number of contact tracers available, county health authorities do not specifically ask whether an individual has visited a restaurant or bar.  Given the methods of contract tracing, reporting of outbreaks at restaurants and bars are usually only identified among staff members.  The true spread of the outbreak is not known because it is difficult to ascertain if any patrons became ill after going to the bar or restaurant.  For that reason, it is unsurprising that contact tracing has not identified restaurants or bars as a known

Page 7 -     DECLARATION OF DR. DEAN SIDELINGER IN OPPOSITION TO PLAINTIFFS' MOTION
              FOR A TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

source of infection for patrons. As noted previously, a majority of infections in November do not have a known source, and the contact tracing data cannot exclude restaurants and bars as a source of these infections. Even with these limitations, local public health authorities have reported 162 restaurant and bar outbreaks to Oregon Health Authority. This accounts for 4.7% of the outbreaks (total=3470) reported in Oregon.

17. The differences in the risk of transmission is a reason why the Governor's Executive Orders distinguish among different settings. The prevalence of the disease in the community is a relevant consideration in every setting.

18. I understand that the plaintiffs in this case argue that the Executive Orders lack a public health justification for distinguishing between restaurants and other commercial settings and private in-home hospitality. However, contrary to their arguments, there are public-health-based reasons that support the distinctions made under Governor Brown's Executive Orders.

19. Restaurants and bars differ from retail settings in two important respects. First, in restaurants and bars, people from different households in the same party may be seated together and near other parties for the length of a meal. By contrast, close contact between individuals in stores and other retail settings such as malls is comparatively brief. Shoppers may pass each other in a store, but they do not typically spend extended periods of time near the same individuals. Second, people cannot wear face coverings, like masks, while they eat and drink. In retail settings, face coverings are generally required.

20. Private social gatherings are an important source of disease spread in Oregon. For that reason, under Executive Order 20-65, such gatherings are limited to six people from no more than two households. These limitations would limit the spread of disease from an infected person to a smaller number of people.

21. Currently, without a vaccination or effective treatment that can prevent complications and death in patients with COVID-19, the only effective method to impact

complications and fatalities is decreasing transmission. This is done by separating ill people, including infected individuals without symptoms, from other individuals. The decrease in transmission to date from community mitigation measures has prevented illnesses, and deaths, in Oregon. This has kept the death rate due to COVID-19 in Oregon lower than in other states. Because there is not yet a vaccine and treatments continue to be supportive or experimental, continuing closures and other physical distancing measures are necessary to limit transmission and keep COVID-19 mortality rates low.

22. The precise case fatality rate for COVID-19 in general or in Oregon in particular is unknown. However, Oregon's current data suggest that it is roughly 1.3%, about 10 times higher than for influenza. In addition, some people have suffered from long stretches of acute illness. The long-term consequences for individuals even after they recover from the acute illness is unknown, but COVID-19 infection complications include coagulopathy and cardiomyopathy, which suggests there may be long-term effects.

23. The Portland Metro hospitals have had significant constraints on hospital capacity over the past three weeks. These hospitals have all begun to limit elective surgeries. As of November 22, there are only 40 staffed ICU beds available to accept new patients in Region 1, which includes the Metro region. Hospitalizations are a lagging indicator: today's hospitalizations reflect the cases from one to two weeks ago, when the number of new infections was lower. I therefore expect that hospitalizations will continue to rise in the coming weeks. In Oregon, this is the first time we have faced the possibility that our hospitals could be overwhelmed, and that people may not be able to access high-quality care. A continued rise in COVID-19 cases would have terrible consequences. This is likely the most dangerous time in the history of the pandemic. As we have seen in other countries (Italy and Spain) and states (New York), the health care system can quickly become overwhelmed and lack the staff, beds, and equipment necessary to care for sick patients. It behooves us to continue to slow the spread

Page 9 -    DECLARATION OF DR. DEAN SIDELINGER IN OPPOSITION TO PLAINTIFFS' MOTION
           FOR A TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

in an effort to not overwhelm health care, and to delay and prevent transmission while we await a vaccine.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED November 23, 2020.

                                      *s/Dean E. Sidelinger*
                                    DEAN E. SIDELINGER